### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CLEOTHER TIDWELL, #N-41754, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-0581-SMY |
| | ) | |
| KIMBERLY BUTLER, | ) | |
| AMY LANGE, LESLIE McCARTY, | ) | |
| and LORI OAKLEY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges incidents of harassment and battery by Menard medical staff member Amy Lange and claims that his Eighth Amendment rights were violated because prison officials failed to protect him from Lange's conduct and failed to intervene in her ongoing pattern of harassment. In relation to these claims, Plaintiff names Defendants Kimberly Butler (warden), Leslie McCarty (Administrative Review Board) and Lori Oakley (grievance officer).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the Complaint.  After fully considering the allegations in Plaintiff's Complaint, the Court concludes that this action is subject to summary dismissal.

## Background

Plaintiff has been incarcerated at Menard for a number of years, during which time he has sought medical attention on numerous occasions for conditions such as high blood pressure

(Doc. 1 at 12). His complaints about his medical care stem back to 2009 when he alleges that the "medical lady"—whom he believes is Amy Lange—began a course of verbally abusive, intimidating and threatening behavior although he does not describe any particular incidents in 2009 (*Id.*).

Lange allegedly threatened to have the Plaintiff sent to segregation if he filed too many sick call slips (*Id.*). He complains that at some point when he saw Lange, she spoke to him in a demeaning combative manner and jammed a thermometer in his mouth (*Id.*). The same day of the thermometer incident, Lange apparently sent a guard to his cell to tell him to cool off and to file fewer sick call slips for a while (*Id.*). His statement of the claim does not associate dates with any of this alleged conduct by Lange (*Id.*).

The exhibits Plaintiff attached to his Complaint provide a loose timeframe for his allegations. The thermometer incident took place on or about November 26, 2014 (Doc. 1, p. 10). After that incident, he began the grievance process, which continued through at least through the fall of 2015 (*Id.* at 14-28). None of his grievances allege a specific threat of violence towards him by Lange, nor do the grievances contain any complaints that his medical needs went unattended (*Id.*). In some of the grievances, he complained that his blood pressure medication dosage was not reduced at his request and that the medical staff response a decrease would be dangerous because his blood pressure was in the high range of normal (*Id.* at 15-17).

The Complaint makes a single sweeping allegation that the warden, the counselor, the grievance officer, and the IDOC director[1] all ignored the Plaintiff's grievances (*Id.* at 12). Plaintiff seeks compensatory damages for Lange's threats to withhold care and her act of battery, as well as punitive damages from associated stress, and depression (*Id.* at 13). He seeks punitive

---

[1] In the body of the complaint the Plaintiff references the IDOC Director at page 12; however, the IDOC Director is not named in the caption on pages 1-3 of the complaint, or the jurisdiction section. Accordingly, this Court will not treat the IDOC Director as a party to this action.

damages from the other three defendants for failing to intervene or to protect him from Lange's

acts (*Id.*). He also asks that the Court hold an in camera review of complaints lodged against

Lange to see if there are complaints of the same nature as his (*Id.*).[2]

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into

the following enumerated claims. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The

designation of these counts does not constitute an opinion regarding their merit.

> **Count 1:**   Eighth Amendment failure to protect claim against Defendants for Lange's alleged harassment;
>
> **Count 2:**   Eighth Amendment failure to intervene claim against Defendants for Lange's alleged harassment; and,
>
> **Count 3:**   State law claims against Defendant Lange for battery, medical battery, negligence, intentional infliction of emotional distress, and assault.

Counts 1 and 2 shall be dismissed with prejudice for failure to state a claim upon which

relief may be granted. All of the state law claims in Count 3 shall be dismissed without prejudice

because this Court is declining to exercise its supplemental jurisdiction in the absence of an

overarching federal claim.

## Count 1

The Eighth Amendment to the United States Constitution protects prisoners from cruel

and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435,

439 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as

inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *See Rhodes*

---

[2] The Court will not grant this request because it is declining to exercise its jurisdiction over the state law claims related to Lange.

*v. Chapman*, 452 U.S. 337, 346-47 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the United States Supreme Court held that "prison officials have a duty…to protect prisoners from violence at the hands of other prisoners." Not every risk of harm gives rise to a constitutional liability to protect. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2011). Plaintiff must make a two-part showing: 1) that there was a serious risk of peril; and, (2) that the liable individual easily could have done something to avert the risk, but did not do so. *Id.*

A condition may be serious if it poses a substantial risk of serious harm. *See Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). For example, the risk of serious harm is indisputably high if an inmate with a known history of mental illness and suicidal behaviors is exhibiting suicidal ideation while incarcerated. *Id.* Untreated mental illness or the lack of proper nutrition are just two examples of potentially serious conditions. *Id.* A threat to an inmate's physical safety may also constitute a serious risk. *James*, 956 F.2d at 699. "A condition is objectively serious if failure to treat it could result in further significant injury or unnecessary and wanton infliction of pain." *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) (citations omitted). Cancer that causes difficulty swallowing, unmedicated epilepsy, an untreated infected cyst, or multiple illnesses cause extreme cramping and loss of consciousness have all be found to be objectively serious, whereas a mere cold, scratch, or headache, have not been found to be objectively serious. *See Reed*, 178 F.3d at 853 (collecting cases). Additionally, a risk of harm is only serious if there is a strong likelihood that, absent action, harm will occur. *Pinkston*, 440 F.3d at 889.

Additionally, a plaintiff must prove that prison officials were aware of a specific, impending, and substantial threat to his safety and choose to refrain from acting. *Pope v. Shafer*,

86 F.3d 90, 92 (7th Cir. 1996) (noting that a jury was entitled to rely on evidence that a captain knew of a risk to an inmate and a pending transfer request, but failed to act on the request in finding that the captain failed to protect the inmate). A defendant's willingness to take affirmative steps to stop a dangerous situation is relevant to whether that defendant showed deliberate indifference. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (noting that a guard was not required to personally intervene in a fight, and could take sufficient action by calling for back up).

Here, the Plaintiff fails to state a claim because he did not demonstrate that he notified the defendants of a specific and serious threat of harm, nor does he explain how the defendants personally knew of a threat to him and deliberately ignored it. First, as to the seriousness of the threat, Plaintiff claims that he began complaining of harassment as early as 2009 and that he reported a single incident of being jabbed by a thermometer in 2014. Though some of his claims may suggest a threat of harm, such as Lange's threat that he would be deprived of medical care, nothing in the complaint shows that there was a serious risk that any harm would actually occur. While Plaintiff claims that he was frequently told he would not receive medical care or that he would be sent to segregation, he never alleges that either of these harms actually took place. In fact, the attachments to his Complaint suggests that he received ongoing medical care and was provided proper dosages of his blood pressure medication.

The single incident of physical harm he alleges—being jabbed by a thermometer—did not result in a physical injury. Moreover, he does not allege that he ever notified the defendants that he feared further physical attacks. Though suffering physical harm is not a predicate to stating a claim for protection, in this factual scenario, where the Plaintiff is claiming that threats went on for six years, some increase in the severity of the threats would lend credibility to his

claim that there was a specific threat that the defendants failed to address.

As to any claim by Plaintiff that Defendants Butler or Oakley deliberately failed to protect him from threats by Lange, the claims must be dismissed. A prison official who rules against a prisoner on an administrative complaint does not cause or contribute to a violation. *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). The attachments to the Complaint do show that the Plaintiff filed grievances about his medical care, but those grievances also reflect that Butler and Oakley monitored his medical care, ensuring that his concerns were addressed. As such, they were not deliberately indifferent. *See Shields*, 664 F.3d at 181; *George*, 507 F.3d at 609-10.

Plaintiff does not allege that Defendant McCarty was personally aware of a threat to him, or that she personally ignored it. McCarty's lack of personal involvement necessitates dismissal against her. *See e.g. Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[section] 1983 does not allow actions against individuals merely for their supervisory role of others…individual liability under 42 U.S.C. 1983 can only be based on a finding that the defendant caused the deprivation at issue"); *Pinkston*, 440 F.3d at 889.

In light of the paucity of evidence of a serious threat, the absence of a showing that past threats ever came to fruition and the fact that a prison official cannot be liable for ruling a certain way on a grievance or for ignoring a grievance they are not personally aware of, this Court finds that the Plaintiff has failed to state a claim for failure to protect. Accordingly, Count 1 is dismissed with prejudice as to all defendants.

## Count 2

Under the Eighth Amendment, a correctional officer may be held liable for failing to intervene if he or she has a realistic opportunity to step forward and protect a plaintiff from

another officer's excessive force, but fails to do so. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). However, there is not a proper basis for a failure to intervene if there is not an underlying constitutional violation. *Id.* Here, Plaintiff has failed to establish an underlying constitutional violation. Accordingly, Count 2 must also be dismissed with prejudice for failure to state a claim.

### Count 3

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), if the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). However, where all federal claims are being dismissed, the Court may decline to exercise supplement jurisdiction over the remaining state law claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999) (noting that once federal claims are dismissed, supplemental jurisdiction is discretionary as to the remaining state law claims).

Because all of Plaintiff's federal claims are being dismissed, the Court finds that it is appropriate to decline to exercise its supplemental jurisdiction over the remaining state law claims. Accordingly, all state law claims set forth in Count 3 are hereby dismissed without prejudice.

### Disposition

**COUNTS 1 AND 2 are DISMISSED with prejudice** as to Defendants **BUTLER, McCARTY and OAKLEY** for failure to state a claim upon which relief. **COUNT 3** is **DISMISSED without prejudice** as to **ALL DEFENDANTS**.

This dismissal does not count as a strike for purposes of 28 U.S.C. § 1915(g), because the

state law claims are not being dismissed with prejudice. *See Turley v. Gaetz*, 625 F.3d 1005, 1012 (7th Cir. 2010).

       **IT IS SO ORDERED.**

       **DATED: November 8, 2016**

<br>

                                   s/ STACI M. YANDLE
                                   United States District Judge